Brian S. Kabateck, SBN 152054
(bsk@kbklawyers.com)
Christopher B. Noyes, SBN 270094
(cn@kbklawyers.com)
Joana Fang, SBN 309623
(jf@kbklawyers.com)
Stephanie E. Charlin, SBN 316543
(sc@kbklawyers.com)
**KABATECK LLP**
633 W. Fifth Street, Suite 3200
Los Angeles, CA 90071
Telephone: (213) 217-5000
Fax: (213) 217-5010

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| AUDREY STEELE, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>NORDSTROM, INC.; and DOES 1 through 10,<br><br>        Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Audrey Steele ("Plaintiff"), individually, and on behalf of the class defined below, brings this class action complaint against Nordstrom, Inc. ("Nordstrom") and DOES 1 through 10 (collectively, "Defendants") and alleges as follows:

## NATURE OF THE CASE

1.     On or around November 5, 2018, Nordstrom notified Plaintiff and the putative class of a data breach that occurred on October 9, 2018 (the "Notice of Data Breach"), whereby the confidential, personal information of Plaintiff and the Class was mishandled and improperly made available to the public and unauthorized third parties (the "Data Breach").   The personal information included names, Social Security numbers, payment card information, checking account and routing numbers, insurance provider information, salary information, dates of birth, addresses, and phone numbers (collectively, the "PII").

2.     Although the Data Breach was identified on October 9, 2018, Nordstrom waited nearly one month to notify Plaintiff and Class members of the Data Breach. In the Notice of Data Breach, the only information Nordstrom provided is that on October 9, 2018, a contract worker improperly handled Plaintiff and Class members' PII, which it is investigating.   Nordstrom's "Information Security team promptly discovered   the   incident   that   day,   notified   law   enforcement   and   began   a comprehensive investigation."  Nordstrom also states that "[t]he contract worker who improperly handled this information no longer has any access to [its] systems, and [Nordstrom is] putting additional measures in place to help prevent this from happening again."

3.     The Notice of Data Breach failed to adequately inform Plaintiff and Class members how Nordstrom's contract worker mishandled the PII, why the contract worker was ever provided access to the PII, why Nordstrom maintained Plaintiff's PII, and whether any additional unauthorized parties had access to the PII, preventing Plaintiff and Class members from fully appreciating the risks associated

**CLASS ACTION COMPLAINT**

with the Data Breach, which involves sensitive information such as their Social Security numbers, payment card information, checking account and routing numbers, and insurance provider information.

4. Also absent from the Notice of Data Breach is any explanation as to why Nordstrom waited one month to notify Plaintiff and Class members of the Data Breach, and why it allowed them to remain at risk of identity theft and fraud as a result of the Data Breach.

5. The Data Breach occurred not only because Nordstrom failed to implement adequate security measures to safeguard Plaintiff's and Class members' personal information, but because it willfully ignored *known* weaknesses in its data security. Unauthorized parties, such as this contract worker, routinely attempt to gain access to and steal personal information from networks and information systems, especially from entities such as Nordstrom known to possess a large number of individuals' valuable personal and financial information.

6. As a result of Nordstrom's negligent, reckless, and/or willful failure to prevent and/or remedy the Data Breach, Plaintiff and Class members are more susceptible to identity theft and have experienced and will continue to experience an increased risk of financial harms, in that they are at substantial risk of identity theft, fraud, and other harm due to the Data Breach.

## PARTIES

**Plaintiff Audrey Steele**

7. Plaintiff Audrey Steele is a resident of California and was employed at Nordstrom, Inc. from March-August 2017. On or about November 5, 2018, Plaintiff received the Notice of Data Breach from Nordstrom regarding the Data Breach. As a result of the Data Breach, Plaintiff has spent hours addressing issues arising from the Data Breach, including monitoring her credit cards and bank accounts for fraudulent activity. Because of the increased risk of identity theft and fraud resulting from the Data Breach, Plaintiff signed up for credit monitoring with TransUnion and

**CLASS ACTION COMPLAINT**

is paying $20.00 per month.

**Defendant Nordstrom, Inc.**

8.    Defendant Nordstrom, Inc. is incorporated in Washington, with its headquarters and principal place of business located at 1700 Seventh Ave, Seattle, WA, 98101.

**Unknown Defendants**

9.    The true names and/or capacities, whether individual, corporate, partnership, associate or otherwise, of the Defendants herein designated as Does and/or Roes are unknown to Plaintiff at this time who, therefore, sues said Defendants by fictitious names.  Plaintiff alleges that each named Defendant herein designated as Does and/or Roes is negligently, willfully, contractually, or otherwise legally responsible for the events and happenings herein referred to and proximately caused damages to Plaintiffs as herein alleged.  Plaintiff will seek leave of Court to amend this Complaint to insert the true names and capacities of such Defendants when they have been ascertained and will further seek leave to join said Defendants in these proceedings.

10.    Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, Does and/or Roes were agents, servants, employees, partners, or joint venturers of each other and that in doing the acts herein alleged, were acting within the course and scope of said agency, employment, partnership, or joint venture. Each and every Defendant aforesaid was acting as a principal and was negligent or grossly negligent in the selection, hiring and training of each and every other Defendant or ratified the conduct of every other Defendant as an agent, servant, employee or joint venture.

## JURISDICTION AND VENUE

11.    This Court has diversity jurisdiction over this action based on the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action involving more than 100 class members, the amount in controversy exceeds $5 million

**CLASS ACTION COMPLAINT**

exclusive of interest and costs, and at least one class member is a citizen of a state different from Defendants.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants are entities that do business in and are subject to personal jurisdiction in this District, regularly transacts business here, and some of the class members reside in this District.  In addition, the events giving rise to Plaintiff's causes of action arose, in part, in this District.

## FACTS

### A.     The Data Breach

13.     Nordstrom is a department store chain that operates approximately 380 stores in approximately 40 states and is believed to have over 75,000 current and former employees.

14.     On November 5, 2018, Nordstrom notified Plaintiff and Class members that it experienced a data breach whereby a Nordstrom contract worker mishandled their confidential information, including names, Social Security numbers, payment card information, checking account and routing numbers, insurance provider information, salary information, dates of birth, addresses, and phone numbers.

15.     Despite discovering the Data Breach on October 9, 2018, Nordstrom waited nearly one month to notify Plaintiff and Class members that their PII had been mishandled in a way that it may be further misused by unauthorized third parties.

16.     The notice is largely void of any details and only provides that a breach occurred on October 9, 2018, when a contract worker improperly handled Plaintiff and Class members' PII, that Nordstrom is investigating the incident and notified law enforcement, and that the contract worker who improperly handled this information no longer has any access to its systems, and that Nordstrom is putting additional measures in place to help prevent this from happening again.

17.     As a result of the deficient notice, Plaintiff and Class members who received the Notice of Data Breach, were foreclosed from fully and timely

**CLASS ACTION COMPLAINT**

appreciating the risks entailed in the Data Breach, especially a data breach that involves extremely confidential and sensitive information including, but not limited to, Social Security numbers, payment card information, checking account and routing numbers, and insurance provider information.

### B.    Personally Identifiable Information ("PII")

18.    PII is of great value to hackers and cyber criminals.  Indeed, the data compromised in the Data Breach can be used in a variety of unlawful ways.

19.    PII is information that can be used to distinguish, identify, or trace an individual's identity, such as their name, Social Security number, and biometric records.  This can be accomplished alone, or in combination with other personal or identifying information that is connected, or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.

20.    PII does not only include data that can be used to directly identify or contact an individual (e.g., name, e-mail address), but it also includes particularly sensitive personal data (e.g., Social Security number, bank account number, payment card numbers).

21.    Although Nordstrom has claimed it does not believe the PII has been misused, it still encourages the affected personnel to "remain vigilant for incidents of fraud and identity theft by reviewing [their] account statements and monitoring [their] free credit reports."

22.    Given the nature of the Data Breach, it is foreseeable that the compromised PII will be used to access Plaintiff and the Class members' financial accounts, thereby providing access to additional PII or personal and sensitive information.

23.    Further, as technology advances, computer programs may scan the Internet with wider scope to create a mosaic of information that may be used to link information to an individual in ways that were not previously possible.  This is known

**CLASS ACTION COMPLAINT**

as the "mosaic effect."[1]

24.    Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access a multitude of the user's accounts, particularly when they have easily-decrypted passwords and security questions.

25.    The PII Nordstrom improperly disseminated is of great value to hackers and cyber criminals and the data compromised in the Data Breach can be used in a variety of unlawful manners, including opening new credit and financial accounts in users' names, obtaining protected health information, and/or committing medical fraud.

26.    Unfortunately for Plaintiff and Class members, a person whose PII has been compromised may not fully experience the effects of the breach for years to come:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[2]

27.    Accordingly, Plaintiff and Class members will bear a heightened risk of injury for years to come.   Identity theft is one such risk and occurs when an individuals' PII is used without his or her permission to commit fraud or other crimes.[3]

28.    According to the Federal Trade Commission, "the range of privacy-

---

[1] Fed. Chief Information Officers Council, Recommendations for Standardized Implementation of Digital Privacy Controls (Dec. 2012) pp. 7-8.
[2] G.A.O., Personal Information:  Data Breaches are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent is Unknown (June 2007) <http://www.gao.gov/assets/270/262904.html.> [as of June 24, 2017].
[3] Fed. Trade Comm'n, Taking Charge: What To Do If Your Identity Is Stolen (April 2013)  <https://www.consumer.ftc.gov/articles/pdf-0014-identity-theft.pdf> [as of June 24, 2017].

**CLASS ACTION COMPLAINT**

related harms is more expansive than economic or physical harm or unwarranted intrusions and that any privacy framework should recognize additional harms that might arise from unanticipated uses of data."[4]

29.    As a direct and proximate result of Nordstrom's reckless and negligent actions, inaction, and omissions, the resulting Data Breach, the unauthorized release and disclosure of Plaintiff's and Class members' PII, and Nordstrom's failure to properly and timely notify Plaintiff and Class members, Plaintiff and Class members are more susceptible to identity theft and have experienced and will continue to experience an increased risk of experiencing the following losses, *inter alia*:

a.    money and time expended to prevent, detect, contest, and repair identity theft, fraud, and/or other unauthorized uses of personal information;

b.    money and time lost as a result of fraudulent access to and use of their financial accounts;

c.    loss of use of and access to their financial accounts and/or credit;

d.    money and time expended to avail themselves of assets and/or credit frozen or flagged due to misuse;

e.    impairment of their credit scores, ability to borrow, and/or ability to obtain credit;

f.    lowered credit scores resulting from credit inquiries following fraudulent activities;

g.    money, including fees charged in some states, and time spent placing fraud alerts and security freezes on their credit and/or financial records and accounts;

h.    costs and lost time obtaining credit reports in order to monitor their

---

[4] Fed. Trade Comm'n, Protecting Consumer Privacy in an Era of Rapid Change (March 2012) <https://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-report-protecting-consumer-privacy-era-rapid-change-recommendations/120326privacyreport.pdf> [as of June 24, 2017].

**CLASS ACTION COMPLAINT**

credit records;

i.  past and future costs from the purchase of credit monitoring and/or identity theft protection services;

j.  costs and lost time from dealing with administrative consequences of the Data Breach, including identifying, disputing, and seeking reimbursement for fraudulent activity, canceling/freezing compromised financial accounts and associated payment cards, and investigating options for credit monitoring and identity theft protection services;

k.  money and time expended to ameliorate the consequences of the filing of fraudulent tax returns;

l.  lost opportunity costs and loss of productivity from efforts to mitigate and address the adverse effects of the Data Breach including, but not limited to, efforts to research how to prevent, detect, contest, and recover from misuse of their personal information;

m.  loss of the opportunity to control how their personal information is used; and

n.  continuing risks to their personal information, which remains subject to further harmful exposure and theft as long as Nordstrom fails to undertake appropriate, legally required steps to protect the personal information in its possession.

30.  The risks associated with identity theft are serious. "While some identity theft victims can resolve their problems quickly, others spend hundreds of dollars and many days repairing damage to their good name and credit record. Some consumers victimized by identity theft may lose out on job opportunities, or denied loans for education, housing or cars because of negative information on their credit

8

**CLASS ACTION COMPLAINT**

1  reports.  In rare cases, they may even be arrested for crimes they did not commit."[5]

2  31.  Further, criminals often trade stolen PII on the "cyber black-market" for

3  years following a breach.  Cybercriminals can post stolen PII on the internet, thereby

4  making such information publicly available.

5  ## CLASS ACTION ALLEGATIONS

6  32.  Plaintiff brings all claims as class claims under Federal Rule of Civil

7  Procedure 23(b)(1), (b)(2), (b)(3), and (c)(4).

8  ### A.  Class Definition

9  33.  Plaintiff brings the first count for negligence on behalf of a proposed

10  nationwide class ("Nationwide Class"), defined as follows:

> *All natural persons and entities in the United States, employed by Nordstrom Inc., and/or its affiliates, whose personal information Defendants mishandled in the data breach that occurred on or about October 9, 2018.*

Plaintiff brings the second through third counts for violation of California laws on behalf of a proposed California subclass ("California Sub-Class"), defined as follows:

> *All natural persons and entities in California, employed by Nordstrom Inc., and/or its affiliates, whose personal information Defendants mishandled in the data breach that occurred on or about October 9, 2018.*

34.  **Numerosity:** The Nationwide Class and California Sub-Class are so numerous that joinder of all members is impracticable.  Based on information and belief, the Nationwide Class includes over 75,000 individuals, of which approximately 10,000 or more also belong to the California Sub-Class, whose PII was compromised, stolen, and/or disclosed during the Data Breach.  The parties will

---

[5]  True Identity Protection: Identity Theft Overview, ID Watchdog <http://www.idwatchdog.com/tikia//pdfs/Identity-Theft-Overview.pdf> [as of Sept. 23, 2016].

**CLASS ACTION COMPLAINT**

be able to identify the exact size of the class through discovery and Nordstrom's own documents.

35. **Commonality:** There are numerous questions of law and fact common to Plaintiff, the Nationwide Class, and the California Sub-Class, including, but not limited to, the following:

- whether Defendants engaged in the wrongful conduct alleged herein;
- whether Defendants owed a duty to Plaintiff and members of the Nationwide Class to protect their personal information;
- whether Defendants breached their duties to protect the personal information of Plaintiff and Nationwide Class members;
- whether Nordstrom knew or should have known that its data security systems, policies, procedures, and practices were vulnerable to a breach;
- whether Plaintiff and Nationwide Class members suffered legally cognizable damages stemming from the increased risk of identity theft as a result of Defendants' conduct, including past and future costs incurred to prevent identity theft and the misappropriation of their personal information;
- whether Defendants violated California consumer protection statutes; and
- whether Plaintiff, California Class, and Nationwide Class members are entitled to equitable and injunctive relief.

36. **Typicality:** Plaintiff's claims are typical of the claims of the Nationwide Class and California Sub-Class members. Plaintiff, like all proposed Nationwide Class and California Sub-Class members, had its personal information compromised in the Data Breach and, accordingly, has and will incur losses to prevent, detect, contest, and repair identity theft, fraud, and/or other unauthorized uses of personal information.

37. **Adequacy:** Plaintiff will fairly and adequately protect the interests of

**CLASS ACTION COMPLAINT**

the Nationwide Class and California Sub-Class. Plaintiff has no interests that are averse to, or in conflict with, the Nationwide Class or California Sub-Class members. There are no claims or defenses that are unique to Plaintiff. Likewise, Plaintiff has retained counsel experienced in class action and complex litigation, including data breach litigation, that has sufficient resources to prosecute this action vigorously.

38. **Predominance:** The proposed action meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Nationwide Class and California Sub-Class predominate over any questions which may affect only individual members.

39. **Superiority:** The proposed action also meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions is superior to multiple individual actions or piecemeal litigation, avoids inconsistent decisions, presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each class member.

40. Absent a class action, the majority of Nationwide Class and California Sub-Class members would find the cost of litigating their individual claims prohibitively high and, therefore, would have no effective remedy.

41. **Risks of Prosecuting Separate Actions:** Plaintiff's claims also meet the requirements of Federal Rule of Civil Procedure 23(b)(1) because prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards for Nordstrom. Nordstrom continues to maintain the PII of Nationwide Class and California Sub-Class members and other individuals, and varying adjudications could result in incompatible standards with respect to its duty to protect individuals' personal information; and whether the injuries suffered by Nationwide Class and California Sub-Class members are legally cognizable, among others. Prosecution of separate

**CLASS ACTION COMPLAINT**

actions by individual class members would also create a risk of individual adjudications that would be dispositive of the interests of other class members, not parties to the individual adjudications, or otherwise substantially impair or impede on the ability of class members to protect their interests.

42. **Injunctive Relief:** In addition, Defendants have acted and/or refused to act on grounds that apply generally to the Nationwide Class and California Sub-Class, making injunctive and/or declaratory relief appropriate with respect to the class under Federal Rule of Civil Procedure 23(b)(2). Defendants continue to (1) maintain the personally identifiable information of Nationwide Class and California Sub-Class members, (2) fail to adequately protect their personally identifiable information, and (3) violate their rights under numerous state employee and/or consumer protection laws and other claims alleged herein.

## CAUSES OF ACTION

### COUNT I

### NEGLIGENCE

(On Behalf of the Nationwide Class Against Defendants)

43. Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

44. Plaintiff brings this claim on behalf of herself and the Nationwide Class.

45. Plaintiff and Nationwide Class members were required to provide Defendants with their PII. Defendants collected and stored this information including their names, Social Security numbers, payment card information, checking account and routing numbers, insurance provider information, salary information, dates of birth, addresses, and phone numbers.

46. Nordstrom had a duty to Plaintiff and Nationwide Class members to safeguard and protect their PII.

///
///

12

**CLASS ACTION COMPLAINT**

47.     Defendants assumed a duty of care to use reasonable means to secure and safeguard this PII, to prevent its disclosure, to guard it from theft, and to detect any attempted or actual breach of its systems.

48.     Defendants have full knowledge about the sensitivity of Plaintiff and Nationwide Class members' PII, as well as the type of harm that would occur if such PII was wrongfully disclosed.

49.     Defendants have a duty to use ordinary care in activities from which harm might be reasonably anticipated in connection with user PII data.

50.     Defendants breached their duty of care by failing to secure and safeguard the PII of Plaintiff and Nationwide Class members.  Defendants negligently stored and/or maintained its data security systems.

51.     Further, Defendants by and through their above negligent actions and/or inactions, breached their duties to Plaintiff and Nationwide Class members by failing to design, adopt, implement, control, manage, monitor and audit its processes, controls, policies, procedures and protocols for complying with the applicable laws and safeguarding and protecting Plaintiff's and Nationwide Class members' PII within their possession, custody and control.

52.     Plaintiff and the other Nationwide Class members have suffered harm as a result of Defendants' negligence.  These victims' loss of control over the compromised PII subjects each of them to a greatly enhanced risk of identity theft, fraud, and myriad other types of fraud and theft stemming from either use of the compromised information, or access to their user accounts.

53.     It was reasonably foreseeable – in that Defendants knew or should have known – that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Nationwide Class members' PII would result in its release and disclosure to unauthorized third parties who, in turn wrongfully used such PII, or disseminated it to other fraudsters for their wrongful use and for no lawful purpose.

///

**CLASS ACTION COMPLAINT**

54.    But for Defendants' negligent and wrongful breach of their responsibilities and duties owed to Plaintiff and Nationwide Class members, their PII would not have been compromised.

55.    As a direct and proximate result of Defendants' above-described wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Nationwide Class members' PII, they have incurred (and will continue to incur) the above-referenced economic damages, and other actual injury and harm for which they are entitled to compensation.    Defendants' wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence/negligent misrepresentation.

56.    Plaintiff and Nationwide Class members are entitled to injunctive relief as well as actual and punitive damages.

## CAUSES OF ACTION

### COUNT II

**Violation of California Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.***

(On Behalf of the California Sub-Class Against Defendants)

57.    Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

58.    This cause of action is brought pursuant to the California Consumers Legal Remedies Act (the "CLRA"), California Civil Code section 1750, *et seq.*    This cause of action does not seek monetary damages at this time but is limited solely to injunctive relief.    Plaintiff will later amend this Complaint to seek damages in accordance with the CLRA after providing Defendants with notice required by California Civil Code section 1782.

59.    Plaintiff and California Sub-Class members are "consumers," as the term is defined by California Civil Code section 1761(d).

///

**CLASS ACTION COMPLAINT**

60.     Plaintiff, California Sub-Class members, and Defendants have engaged in "transactions," as that term is defined by California Civil Code section 1761(e).

61.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant was likely to deceive consumers.

62.     California Civil Code section 1770(a)(5) prohibits one who is involved in a transaction from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."

63.     Defendants violated this provision by representing that they took appropriate measures to protect Plaintiff and the California Sub-Class members' PII. Additionally, Defendants improperly handled, stored, and/or protected either unencrypted or partially encrypted data.

64.     As a result, Plaintiff and California Sub-Class members were induced to enter into a relationship with Defendants and induced to provide their PII.

65.     As a result of engaging in such conduct, Defendants have violated California Civil Code section 1770.

66.     Pursuant to California Civil Code sections 1780(a)(2) and (a)(5), Plaintiff seeks an order of this Court that includes, but is not limited to, an order enjoining Defendants from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

67.     Plaintiff and California Sub-Class members suffered injuries caused by Defendants' misrepresentations, because they provided their PII believing that Defendants would adequately protect this information.

68.     Plaintiff and California Sub-Class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

69.     The unfair and deceptive acts and practices of Defendants, as described above, present a serious threat to Plaintiff and members of the California Sub-Class.

**CLASS ACTION COMPLAINT**

## CAUSES OF ACTION

### COUNT III

**Violation of Unfair Competition Law,**

**California Business and Professional Code Section 17200,** *et seq.*

(On Behalf of the California Sub-Class Against Defendants)

70.  Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

71.  Plaintiff brings this claim on behalf of herself and the California Sub-Class.

72.  The California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.* ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as defined by the UCL and relevant case law.

73.  By reason of Defendants' above-described wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized disclosure of Plaintiff and California Sub-Class members' PII, Defendants engaged in unlawful, unfair and fraudulent practices within the meaning of the UCL.

74.  Defendants' business practices as alleged herein are unfair because they offend established public policy and are immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers and employees, in that the private and confidential PII of consumers and employees have been compromised for others to see, use, or otherwise exploit.

75.  Defendants' practices were unlawful and in violation of California Civil Code sections 1750, 1798.80, *et seq.* because Defendants negligently, recklessly, willfully, knowingly, and/or intentionally failed to take reasonable measures to protect Plaintiff's and the California Sub-Class members' PII and provide adequate and timely notice of the Data Breach.

///

**CLASS ACTION COMPLAINT**

76.    Defendants' business practices as alleged herein are fraudulent because they are likely to deceive consumers and employees into believing that the PII they provide to Defendants will remain private and secure, when in fact it was not private and secure.    Plaintiff and California Sub-Class members reasonably relied on Defendants' assertions of adequate security (whether by affirmative representation or omission of material facts) in entrusting Defendants with their PII.

77.    Plaintiff and the California Sub-Class members suffered (and continue to suffer) injury in fact and lost money or property as a direct and proximate result of Defendants' above-described wrongful actions, inactions, and omissions including, *inter alia*, the unauthorized release and disclosure of their PII.

78.    Defendants' above-described wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and California Sub-Class members' PII also constitute "unfair" business acts and practices within the meaning of Cal. Bus. & Prof. Code § 17200 *et seq*., in that Defendants' conduct was substantially injurious to Plaintiff and California Sub-Class members, offensive to public policy, immoral, unethical, oppressive and unscrupulous; the gravity of Defendants' conduct outweighs any alleged benefits attributable to such conduct.

79.    But for Defendants' misrepresentations and omissions, and otherwise unfair, unlawful, and/or fraudulent business practices, Plaintiff and California Sub-Class members would not have provided their PII to Defendants or would have insisted that their PII be more securely protected.

80.    As a direct and proximate result of Defendants' above-described wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff and California Sub-Class members' PII, they have been injured: (1) the loss of the opportunity to control how their PII is used; (2) the diminution in the value and/or use of their PII entrusted to Defendants; (3) the compromise, publication, and/or theft of their PII; and (4) costs associated

17

**CLASS ACTION COMPLAINT**

with monitoring their PII, amongst other things.

81.    Plaintiff takes upon herself enforcement of the laws violated by Defendants in connection with the reckless and negligent disclosure of PII.  There is a financial burden incurred in pursuing this action and it would be against the interests of justice to penalize Plaintiff by forcing him to pay attorneys' fees and costs from the recovery in this action.  Therefore, an award of attorneys' fees and costs is appropriate under California Code of Civil Procedure section 1021.5.

## CAUSES OF ACTION

### COUNT IV

**Violation of California Customer Records Act, California Civil Code § 1798.80 et. seq.**

(On Behalf of the California Sub-Class Against Defendants)

82.    Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

83.    "[T]o ensure that personal information about California residents is protected," Civil Code section 1798.81.5 requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

84.    Defendants own, maintain, and license personal information, within the meaning of section 1798.81.5, about Plaintiff and the California Sub-Class.

85.    Defendants violated Civil Code sections 1798.80, *et seq.* by failing to negligently, recklessly, willfully, and/or intentionally failing to take adequate security measures to protect Plaintiff and the California Sub-Class members' PII and/or failing to provide adequate notice of the Data Breach.

///

///

18

**CLASS ACTION COMPLAINT**

86.   As a direct and proximate result of Defendants' violations of sections 1798.80, *et seq.* of the California Civil Code, the Data Breach described above occurred.

87.   As a direct and proximate result of Defendants' violations of sections 1798.80, *et seq.* of the California Civil Code, Plaintiff and the California Sub-Class members suffered the damages described above including, but not limited to, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their personally identifying information.

88.   Plaintiff and the California Sub-Class members seek relief under section 1798.84 of the California Civil Code including, but not limited to, actual damages to be proven at trial, statutory penalties, attorneys' fees and costs, and injunctive relief.

## RELIEF REQUESTED

Plaintiff, on behalf of herself and members of the Nationwide Class and California Sub-Class, request the Court enter judgment against Defendants as follows:

A.   An order certifying this action as a class action under Federal Rule of Civil Procedure 23, defining the Nationwide Class and California Sub-Class requested herein, appointing the undersigned as Class Counsel, and finding that Plaintiff is a proper representative of the Nationwide Class and California Sub-Class requested herein;

B.   Injunctive relief requiring Defendants to (1) strengthen their data security systems that maintain personally identifying information to comply with the applicable state laws alleged herein (including, but not limited to, the California Customer Records Act) and best practices under industry standards; (2) engage third-party auditors and internal personnel to conduct security testing and audits on Defendants' systems on a periodic basis; (3) promptly correct any problems or issues detected

19

**CLASS ACTION COMPLAINT**

by such audits and testing; and (4) routinely and continually conduct training to inform internal security personnel how to prevent, identify and contain a breach, and how to appropriately respond;

C.    An order requiring Defendant to pay all costs associated with class notice and administration of class-wide relief;

D.    An award to Plaintiff and all Nationwide Class and California Sub-Class members of compensatory, consequential, incidental, and statutory damages, restitution, and disgorgement, in an amount to be determined at trial;

E.    An award to Plaintiff and all Nationwide Class and California Sub-Class members of additional credit monitoring and identity theft protection services beyond the package Nordstrom is currently offering;

F.    An award of attorneys' fees, costs, and expenses, as provided by law or equity;

G.    An order requiring Defendants to pay pre-judgment and post-judgment interest, as provided by law or equity; and

F.    Such other or further relief as the Court may allow.


Dated: April 19, 2019                          Respectfully submitted,

                                               **KABATECK LLP**


                                               By:   /s/ Christopher B. Noyes
                                                     *Counsel for Plaintiff and the*
                                                     *Proposed Class*

**CLASS ACTION COMPLAINT**

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues in this action so triable of right.

Dated: April 19, 2019                              Respectfully submitted,

                                                   **KABATECK LLP**


                                       By:  /s/ Christopher B. Noyes
                                            *Counsel for Plaintiff and the*
                                            *Proposed Class*

**CLASS ACTION COMPLAINT**